This is the second case of the day. I hope we haven't kept you waiting too long and you didn't have the opportunity to observe those arguments. These will be equally good, I'm sure. This case is Six Dimensions v. Perficient and Lynn Brady, 19-20505. Looks like Mr. Richter gets to go first. Thank you. Good morning and may it please the court. My name is Patrick Richter and with my co-counsel Rob Shank, we represent Lynn Brady and Perficient, Incorporated. For purposes of our argument this morning, I'm going to address Ms. Brady's issues with respect to the breach of contract summary judgment granted by the district court below. Mr. Shank will address the California statutory law claims against Ms. Brady as well as the trade secret issues relating to Perficient, Incorporated. The district court erred when it granted summary judgment in favor of Six Dimensions on its breach of contract claim against Ms. Brady as it relates to termination certification, which the district court referred to as a 2015 agreement. There aren't very many facts that are important for my part of the argument. Ms. Brady was employed by Six Dimensions. She signed an employment agreement in August of 2014. That employment agreement contained customer and employee non-solicitation provisions Ms. Brady resigned her employment with Six Dimensions voluntarily on June the 10th of 2015 and executed the termination certification on June 18th of 2015. Judge Hittner at the district court erred because there is no 2015 agreement. There is only one agreement in this case. It's the 2014 employment agreement. That employment agreement includes a covenants contained in it. That's the termination certification. That reminder is not and was not an independent agreement. It was part and parcel of and a requirement of the original agreement. The plain language of the agreement makes this clear. Paragraph 6 of the 2014 employment agreement obligates Ms. Brady to execute the termination certification following the end of employment. In addition, just practically speaking, if you look at the document itself, the termination certification is labeled page 7 of 7 in the footer indicating that the parties always intended or thought that this was one document. There is simply no way to read the whole of the 2014 employment agreement together with the certification and conclude that the certification is a new agreement by Ms. Brady not to solicit former Six Dimensions employees. Mr. Bradley, I'm going to ask you two questions. Do you accept or are you contesting that there is sufficient allegation in the complaint and the operative complaint that there are two separate agreements or regardless that 2015 is a separate contract? Secondly, deal with the procedural problem that exists with your argument on whether it was made alone. I don't agree that the pleading is sufficiently clear that there were two separate agreements. There's one count of breach of contract pled and the language of the all of the amended complaints is vague at best in terms of whether it refers to agreements meaning obligations versus separate documents. In any event, when we pled and responded to the summary judgment motion, that pleading was also unclear. The plaintiff's motion for summary judgment on that ground. We argued it as if it was only one agreement, and as soon as Judge Hintner made his ruling and ruled to the contrary, we filed a motion to reconsider and brought our objections and these issues that were arguing on appeal to the court's attention. Well, he partially ruled, did he not, that this argument hadn't been before him and he considered it. I forget what on the local rules he called it, but waived. I'll call it that. And so this was first raised in reconsideration motion. Is that at least fair in assessing how the district court looked at this? That's how the district court viewed it, yes. All right. Now, in the summary judgment filed by Sixth Dimensions in its motion, or perhaps this is in some briefing on the motion, Sixth Dimensions did argue that Brady violated the 2014 agreement and that Brady is responsible for violating the 2015 agreement. Words pulled out of context perhaps from what was presented to the district court. But wasn't that in the presentation to district court prior to the ruling and the district court found you had not responded to that? I agree that that's what the district court said. I think that that is sort of, that is with the benefit of hindsight, finding that argument buried in that, in their pleading, in their briefing on the summary judgment. I don't believe it was ever clear that they intended to assert two separate claims of breach of contract. Was there a hearing on the argument? There was not. Okay. It was decided strictly on the briefing. As between the 2014 and the 2015 agreements, let's assume for purposes of argument that they're two separate agreements, are there any prohibitions or restrictions in the 2015 termination certificate, I think that's what it's called, that are different from the 2014 agreement? Yes, but not materially. What's the difference? It's just a matter of wording, to be quite honest, in the way that the non-solicit obligation of Ms. Brady is phrased. It doesn't materially change the outcome. It's just the order of the wording. And I believe that one of them says she can't hire former colleagues, and one of them omits the hire language. But at the end of the day, the bottom line is they are both restrictive covenants that prohibit her from soliciting her former employee colleagues. Is the solicitation issue for you, or is that your friend who's following you? I want to ask you about California law and no solicitation. I'll answer that. All right. District court relied on a new district court opinion from California. I don't find that controlling law, but it certainly wasn't incorrect for the judge to take note of it. It seems to me what the district court was relying on was AMN, whatever comes after the initials. But the one controlling piece of law we have is Edwards, the one California Supreme Court opinion that people are talking about. Are you saying that this is settled law in California, or do we not still have to, in the hackneyed phrase, make an eerie guess as to what California law is because there's not any straightforward ruling by the California Supreme Court on no solicitation? I think you're closer to the eerie guess. Edwards is the last word from the California Supreme Court on the issue. AMN Healthcare from November of 2018 is the only ruling from a California appellate court. And then the Barker case that we pointed Judge Hittner to was from the Northern District of California. Right. Well, it does seem to me that Edwards left the issue open, as I recall, and you can correct me it wasn't involved in Edwards, the no solicitation. You have cited, I guess, several cases from around the country that have followed AMN and maybe Barker, I don't know if they are citing Barker. But I do think, I do find the issue quite close. Basically, your position requires us to hold, does it not, that this, that in California, a reasonable restriction of any kind, let me do it differently, let me emphasize the other word, a completely reasonable restriction is still a restriction and falls that cannot be enforced. Is that what your argument requires us to be convinced of? Yes, I believe that's correct. All right, counsel, you have saved some time for rebuttal. Mr. Shank. Good morning. May it please the court, I'm Robert Shank. I'm going to address two issues. First, why Six Dimensions is not entitled to a new trial on the trade secret claim that the jury decided against it. And second, the district court's proper grant of summary judgment in favor of liberating on the California unfair competition law statutory claim. First, the district court did not abuse its discretion in denying Six Dimensions motion for new trial. There very clearly is evidence to support the jury's trade secret verdict in Perficient's favor in Mr. Price's testimony alone. Six Dimensions cannot come remotely close to meeting its extremely high burden. After a week-long trial, the jury found for Perficient on Six Dimensions trade secret claim. Specifically, the jury found that Perficient did not misappropriate Six Dimensions training modules, materials, or customer pricing and project information. Six Dimensions only moved for a new trial. The district court acted entirely within its discretion in denying Six Dimensions a new trial. First, a note on the standard of review. As your honors know, the sufficiency of the evidence supporting a jury verdict may be attacked only on motions for directed verdict and for judgment not withstanding the verdict. Six Dimensions never moved for either one. It only moved for a new trial. This court reviews the on the ground that the verdict is against the great weight of the evidence for abuse of discretion, which means in this case that the denial will be affirmed unless there is a clear showing of an absolute absence of evidence to support the jury's verdict. As this court explained in Rivera, it's not this court's function to reweigh the evidence or reevaluate the credibility of witnesses. That is for the jury. The complete absence of evidence standard is extremely deferential to verdicts and is not a burden that Six Dimensions can meet. In spite of that burden, Six Dimensions only ordered the transcript of and cited to the testimony of a single witness, Mr. Aaron Price. In support of its argument, Mr. Price was a solutions architect first for Six Dimensions and then for Perficient. In support of its argument, Six Dimensions cherry-picked a handful of quotes from Mr. Price's testimony and ignores other portions of Mr. Price's testimony, which themselves support the jury verdict. That is all that Perficient must show. I should say this is all that Perficient must show. Any evidence at all that supports the jury's verdict is easily made that minimal showing. As a jury was correctly entitled to conclude, Mr. Price's required, much less used, Six Dimensions training materials. Let me ask you about where you put that. It wasn't necessary, was it, to show that it was used under the Texas statute, Trade Secrets Act? Acquisition... Yes, Your Honor. Is that correct? Acquisition is enough under the Texas statute and that was one of the theories given to the jury in the jury verdict, Your Honor. Now, we do not agree. We don't think you ever get to the use issue, but we believe and we've cited in our cases a number of cases, including a 2019 district court case, which cites to a 2018 Fifth Circuit case, GE versus Betz, that says that use is required. So, we don't think you ever get to the use question because the jury could have construed the evidence as proficient, never even acquired the training materials that were in Mr. Price's possession, but we also believe when we read Texas law as showing that use also is required based on the cases that we've cited in our brief, Your Honor. Right now, we're looking at whether the evidence in front of the jury required a different result and that was one of the theories given to the jury. We do have the evidence in this record that you fully understand of the phone conversation that is documented in some way that Price had with my name, Robert, I believe, if I'm recalling the record. And it certainly was discussed with the defendant. Is there any case... I think we're ready for this too. What support is there that at least discussing in some detail the trade secret with a defendant is acquisition? Your Honor, I am not aware of any case that supports that a mere general telephone discussion or chat discussion supports a conclusion of acquisition. And when you look at that email chat message, it's interesting for a couple reasons. Mr. Price testified in his testimony, he did not show the training materials to Robert Sumner is the individual that you're referring to. He did not show the materials to Mr. Sumner during this telephone call. He did not do a screen share. Mr. Price specifically testified that he never uploaded the materials to a proficient computer, that no one from proficient ever saw the training materials that Mr. Price retained when he left Sixth Dimension. So I'm not aware of any case or precedent that says that merely because an employee retains materials from his prior employment and has a very general discussion about that, that that constitutes acquisition. And the more important point from our standpoint, Your Honor, is the jury could have certainly believed Mr. Price's testimony that he did nothing with the Sixth Dimension's training materials. He didn't upload them. He didn't show them to anybody. He didn't screenshot them to anybody. He did nothing with them. So there's a single telephone call or chat message in the record. And Mr. Price's testimony was clear, at least in the portions that we've cited, that he thought better of it. And he said specifically, Your Honor, in the trial, he said when he talked to Mr. Sumner, Mr. Sumner told him let's not use the training materials. How did the jury make a finding that it was a trade secret? Were they shown the training materials in some way? How was that issue factually presented? They were not, Your Honor. It's very interesting. That's a very interesting question. So the only evidence the jury had in front of them were the, you know, a single or a couple of emails and chat messages and materials not offered as evidence by Sixth Dimension's. All right. You got a little bit of time left. What do you want to tell us? Yeah, let me transition to a competition. Hang on just a second, Mr. Shank. We're having audio problems and video too, for that matter. It must be on his end. There he is. Okay. Why don't you give him 30 seconds? Can you try again, Mr. Shank? We lost you for a moment. Can you hear me okay, Your Honor? Yes. Okay. So just 30 seconds on the unfair competition claim. Can you still hear me okay? Yes. Okay. The district court correctly granted summary judgment on the unfair competition California statutory claim. That statute is a consumer protection statute, and the district court held that it does not apply extraterritorially. And in a nutshell, Your Honor, everything in this case relating to the time period that Ms. Braden left Sixth Dimension and went to Perficient, which was the summer of 2015, everything in this case happened outside of California. Sixth Dimension was not located in California at the time. Ms. Braden is an Ohio resident, and there's no evidence or no allegation that she ever solicited people in California or went to California. So the district court probably— Let me ask you this. I don't see it in the cases in which choice of law provision in a contract is relevant, but I'm not sure there's any case in which that is the only connection to California, where there were no residents and no activities within the state of California. So choice of law in a contract without any residents involved in litigation, is there any case addressing that? Yeah, we believe there is, O'Connor v. Ubertech's case in our brief, and that's pretty much exactly the argument that Sixth Dimension is making, that based on the California choice of law provision, that that somehow confers a basis to apply the California unfair competition law statute. And the court rejected that argument in the O'Connor case. And moreover, Your Honor, even under California law, even if you get to the point where California law applies to the statutory claim, California law clearly says that that statute does not apply extraterritorially. All right, Mr. Shane. Thank you, Your Honor. You're up, Mr. Avery. Good morning. May it please the court. My name is Jeff Avery, and I am representing Sixth Dimensions here in Houston, Texas. I'm an attorney at Doyle LLP. As you heard from appellant and cross appellate counsel, this case involves a ruling by Judge Hintner, where he found there were two separate contracts between Ms. Brading, who was a former employee of Sixth Dimensions. For some quick background, Sixth Dimensions provides services related to the Adobe Marketing Cloud, and Ms. Brading was effectively the liaison between Sixth Dimensions and Adobe as part of that contract for servicing those products for its customers. I think one of the key important points in this case is there is no dispute related to Ms. Brading's breach. In fact, her conduct was particularly egregious related to the non-solicitation and contacting employees, even used terms such as calling a message a ghost message when she contacted an employee named Aaron Price. When she contacted an employee named Dan Kelso, she said, I can't do this because of my non-compete, but if you ever want a job, there's one here for you. And again, she contacted Aaron Price and said, we are hiring like crazy. I can't have this conversation because of my non-compete winky face emoji. Ultimately, she provided a list of contacts from Sixth Dimensions to Perficient, and Perficient hired seven different employees. So there's never been a dispute as to whether Brading breached this particular agreement. Instead, the only issue is choice of law and whether it was valid. And now, what's been raised is whether there are two separate... Mr. Avery, on this question about the validity of the provisions and whether there were two separate contracts, I've got, hopefully it's the right pleading. I've got the amended complaint in my hand. It's 33 pages. Can you tell me where in that complaint it alleges or describes two separate contracts? I don't have the complaint in front of me, Your Honor, but I do know that it specifically refers to the termination agreement at several places as an I know that the complaint also uses the phrase agreements and contracts at multiple places. And in the summary judgment motion that Sixth Dimensions former counsel filed, it specifically moved on the 2014 agreement and the 2015 agreement. There was never a pleading argument raised until after Judge Hittner entered summary judgment. And in fact, the Sixth Dimensions partial motion for summary judgment very specifically asked him to enter separately a breach for the 2014 provision and noted that the 2015 contract didn't even include a choice of law. It was treated as separate agreements. Mr. Avery, I asked Mr. Richter if there are different restrictions as between 2014 and 2015, because I'm trying to understand why any reasonable person would treat these two documents as separate agreements. So, what is your view on that? So, I think there's two points in answer to that. First, the accrual for the non-solicitation period was two years. However, because the second agreement was signed after her termination, it includes an additional eight days of non-solicitation term. So, there's actually additional eight days that she can't solicit employees under the second agreement. And while there are some differences in the terms of the agreements as well, when under Texas law, a separate contract is analyzed, whether it's a separate contract or not, we have to simply analyze whether it meets the terms of the contract. Offer, acceptance, consideration, assent. For sure. Yeah, I understand both of those points. And I mean, the point about extending the non-solicitation period is interesting. My only question was, are there different restrictions in the 2015 as to the 2014? Does it do something differently than the 2014? The only other thing I could say that it does differently is it also releases her from her obligations under the other contracts so that she now has, it confirms the contract's terminated. She now has ownership of any intellectual property, for example. She also has the ability to go work for a competitor because before she had a duty of loyalty in her contract to not be able to do that. And so, to that extent, it confirms that that contract's completed and she now owns her intellectual property. But the terms are generally similar outside of that additional period of eight days that would be in the second contract. Thank you. So, Mr. Avery, going back to this question of notice, we talked about the complaint. You also mentioned the summary judgment motion. I mean, for my review at best, there may be a few sentences you can point to that support your view that you were asking for two separate contractual analyses. But I just don't think anyone can claim it's really was super clear about that. And so then the district court issues its ruling that really treats them as two separate contracts that require separate analysis. And then Ms. Brayden comes in and says, I want reconsideration because I didn't, I wasn't on that understanding. I mean, it just seems to me that's exactly the role for reconsideration. Why shouldn't she have then been able to make these challenges to the idea that there were two contracts? Well, I think in the motion for partial summary judgment, 60s, former counsel did ask for relief of summary judgment for the 2014 and 2015. And Ms. Brayden, the only thing that she did was file a motion for reconsideration on that issue. And generally that issue, a motion for reconsider does not preserve an issue for appeal by this court. And I think the fifth circuit has held that a motion to reconsider doesn't generally preserve those issues for appeal. Whether it was particularly clear or not, I don't know as far as the summary judgment besides the summary judgment specifically asking for relief based on those two items. And it was an affirmative summary judgment that did that. And I believe also the former 60s former counsel also brought up the 2015 agreement in responding to six dimensions or a proficient summary judgment as well. Let me ask you in your summary judgment motion, was a significant issue in that motion that you addressed where the California or Texas law applied? Only for the 2014 contract, which included a specific choice of law provision applying California law. Well understood, but were you making the argument in the motion that regardless, Texas law is going to apply to the 2015? Correct. 2015 and 2014 as well. Six dimensions argued Texas law would control both even though the choice of law provision only applied to the 2014 contract. I know I'm not being clear. My colleagues have the same problem with me. Let me ask this in a somewhat different way. Is it your point today that regardless of what we say about California law in the 2014 agreement that Texas law applies to the 2015 agreement? Correct. And was that point made in that way better way? No doubt in the motion for summary judgment. I believe it was, Your Honor, and I don't have the specific site. I can provide you a letter brief, but I believe that the former counsel did identify Texas law for the 2015 regardless of the 2014. No supplemental briefing needed unless we asked for it. Okay. And Your Honor, I wanted to jump. Just before you move on, you've mentioned a couple times that in the motion for summary judgment on the contract claim that I guess in your prayer for relief or whatever you want to call it and your request for a ruling there, you asked for two separate breach of the contract findings. And I'm just, I might have not had the right document, but can you point me to exactly what you're referring to? Yes, Your Honor. And I apologize. I didn't mean in the prayer for relief. I meant at the end of the section. Are we talking about document 104? Again, I just wanna make sure we're on the same. Your motion for partial summary judgment, what I have is document 104. I can give you the record on appeal site, which I have as 1791. Okay. Yeah, I've got that. And in that section, 60s former counsel says the judge should alternatively, or I don't remember the exact phrase, but should be granted related to the 2015 agreement. All right. I see what you're referring to. It's not exactly in those terms, but it's not at the end of the motion saying this is what the court should. That's how I take in your earlier comments to say, the order should say this, two separate breaches. I see what you're referring to though. I apologize, Your Honor. I was just trying to say at the end of the section. Moving on real quickly to the issue related to Edwards and California law that was addressed. I do agree with Mr. Richter that California law is unsettled related to this particular issue. The Edwards case only addressed restraints on soliciting former customers and clients, not related to soliciting co-employees. And even the AMN case, which is the same level as the Moyes case, which it references, they're just competing court of appeals cases. Neither has been overruled. The California Supreme Court has not acted since that. And AMN is- Let me ask you this now. So cited to us are some cases since either AMN or Barker or both from around the country. Have you cited us any case that supports your position decided since AMN? And do you acknowledge that there, and if the answer to that is no, do you acknowledge there are cases that do not support your position since AMN? And I don't recall off the top of my head if we cited one after AMN. I believe there is one or two out there, but I do acknowledge that Barker and other cases have followed that type of language and the holding of AMN. But I do think it's important to note that both Barker and AMN were both related to staffing agencies, where actually not soliciting co-employees goes directly to restraint of trade because their job is to hire employees. The only way that's relevant, it seems to me, is if there's some standard under California law about reasonable restraints of trade. Is that what you're arguing? Does exist post Edwards? And if so, it does seem to me, even though we are guessing, we don't have a lot to guess on you in your direction. There hasn't been a ton of cases since Edwards that have addressed this, I agree. We are arguing that similar to a provision that prevents a former employee from using a trade secret, which I think Edwards said was reasonable. You can't use confidential information in the future. That's no different than not soliciting or employee. There has not been a case since Edwards that has addressed this at the Supreme Court, as we discussed, and there have been some cases that have gone the other way. But I do believe that this is different than Edwards. And I think AMN Healthcare actually, while it definitely said that Moyes, it contradicted Moyes, it also said we have a different basis for upholding this particular agreement because there was a staffing agency. And Barker is the same exact thing. It's a staffing agency claim. Um, I also do want to point out that the related to the unfair competition law 17 200, which defendant or which braiding has argued it doesn't apply extraterritorially. This policy is UCL 16 600. I believe it's the same statute, and there's been no dispute that it applies extraterritorially in order to prohibit or in order to invalidate this particular contract. Um, quickly moving on to well, one other point I do want to make your honor is the related to the waiver issue is consideration is presumed under Texas law. So to the extent that that is the one element of of the breach of contract claim that braiding is now disputing, you know, when it comes to offer acceptance consideration, that's the only one that they're claiming doesn't exist. It's presumed they didn't. They didn't present any argument that it wasn't met, and she actually did receive some benefit in that it allowed her to now have her own intellectual property and and use, um, things that she created and also go and work for proficient. Um, I do want to address the court's question related to trade secrets and acquisition. I don't believe that there is a case that says disclosing the entire or disclosing the I don't know that there's been one that's addressed that in quite that detail. Um, Tutsi, the Texas Uniform Trade Secret Act is still relatively young. It was only passed in the last 5 to 7 years. I can't remember off the top of my head. So some of these cases that are cited to are not Tutsi cases. And as the court noted, there is a difference between acquisition and use. And Texas legislature had specifically said that misappropriation includes the acquisition through improper means. It doesn't require that the proficient ever use that particular trade secret. And your view of the statute was consistent with how the jury was charged, right? Correct. It tracked it tracked the uniform or the the statute tracks the pattern instruction, which is exactly what we used in this case. It's worth argument jury instruction formation, such as we heard today that acquisitions not good enough that this case law saying that acquisitions not good enough. I apologize, Your Honor. Could you say that again? Was there? Was there an argument at the time of the crafting of the jury instructions and jury verdict form that no, you should not submit the acquisition freestanding because under existing case law, that's not enough. Your Honor, the jury charge was not objected to. It was an agreed charge. All right. And it tracks the text. So the jury verdict, the jury necessarily found no acquisition. Why is that wrong? Why should we reverse that? Because Mr Price admits even giving him the benefit of the doubt and giving all favor, which the jury certainly was entitled to credit Mr Price related to everything he said in his documents. We do not dispute that at all. But Mr Price admits that he acquired the trade secret and that in a discussion with Mr Sumner, who's a director at Proficient, he disclosed and revealed the contents of that trade secret. And their only excuse is, well, we realized that Proficient system was actually better. So we decided not to use it. That doesn't that under Texas law, that is a misappropriation. And while that may be a decent argument for damages, the jury never got to the damages question because it ignored that particular evidence, the great weight of the evidence, and instead answered. Instead, the question was predicated on that finding. Is the only evidence from that text exchange of text messages and whatever the evidence is, what is the evidence that of the detail that was given to Mr Sumner of the trade secrets? The text exchange certainly goes to it. However, the details of the conversation is from Mr Price's testimony where he says he revealed the substance, the contents of the trade secret to Mr Sumner and told him what it was. And based on that evaluation out there, told him when, in a separate communication or in those text messages? I apologize, Your Honor. In a separate communication the next day that was undocumented, Mr Price said... There was another call and where these disclaimers of ever of actually using it were made. I mean, those are two conversations. We have the text conversations. And then you have a phone call later where this denial of any desire to use it was made. Are those the two bases of the communication? Correct. Those are the two bases. And I do want to add that the denial of the use of it also included, though, them discussing the nature of what the trade secrets were, which is what Mr Price testified, which is undisputed. He told Mr Sumner, here's what the nature... And those are his exact words, the nature of what the training materials were. Was that fleshed out beyond that? Or is that all we have is the nature? I mean, was there further examination? What do you mean by that? I don't believe so. I believe it just says the nature and the contents of what they were. And based on that analysis, they decided that they didn't... That proficiency content was better in comparing it to then the six dimensions trade secret that they took. But regardless, at that point that Mr Price is talking to Mr Sumner about it, he has the trade secrets in his hand, working for proficiency at that point, looking at them, talking to him about it. And certainly the jury was entitled to say, well, maybe they didn't strip off the names like they talked about. Maybe they didn't cleanse the material. Maybe they didn't steal it. Maybe they didn't use it. But they admitted to at least talking about it and revealing what it actually was. And I think under Texas law, while there isn't a case that talks about acquisition, by its plain terms, that is what acquisition means. Proficient has the trade secret. And even though they decide, hey, maybe we don't need this material, they still have the knowledge of what the material is, which Mr Price's contract prohibited from doing. So Mr Price knew it was improper and Mr Sumner knew it was an improper use of that particular trade secret. Your honors, do you have any more questions for me? Thank you very much, Mr Avery. Thank you. We have only one of the two advocates, Mr Richter, on rebuttal. Thank you. I will just briefly address one point that would have been Mr Shank's point. I think that the description that Six Dimensions gives of the conversation in which the nature and content of the training materials, there's a lot of work being done there. There was no evidence that he discussed the actual verbiage in the training materials or the substance of them, the contents of them, other than the one sentence in his trial testimony. It doesn't seem to me that that was an opening to find out what that means and is at least a start. And if acquisition is enough, if in fact, would you agree that under acquisitions, whatever that word most reasonably would mean, that describing the contents of the trade secret in some detail is at least significant? I don't want to say you lose your case on that, but isn't that an acquisition if it's insufficient detail? It could be if the detail was sufficient, but I don't think we have evidence here that it was. And the jury heard the evidence and rejected the idea that Perficient ever acquired the right. That there was something there, but it wasn't explored enough. We'll have to decide. I would like to address just a couple other things. I'm looking at the termination certification that was attached and it has become called the 2015 agreement. And there's no release language in here that frees Ms. Brading from doing anything. It's simply a reaffirmation of her previous obligations. It says that she's complied and she's returned intellectual property and documents, but it in no way gives her license to use materials or information that she created when she worked at Six Dimensions. Could an injection contract incorporate the California contract by reference? That's at least one way to get there. It did not. It's strictly a standalone piece of paper that says, I agree I had these restrictions and I agree to abide by them. That's one thing that just practically speaking doesn't make any sense to me in this case, Your Honors, that the parties would enter into two separate agreements, one of which expressly calls for the application of California law, the other of which is silent on the issue and somehow because by virtue of the venue in which the lawsuit was brought applies Texas law. This case was originally filed in New York federal court. It was dismissed on venue grounds and refiled in Houston as one of several options. The plaintiff contemplated filing this case in Ohio. So if this case had been filed in Ohio, Six Dimensions would be here, would be not here, they'd be in a different circuit, but arguing that the certification is governed by some other different state law. That just seems like an absurd result to me when everything else points to the idea that this certification is a reminder, a reaffirmation of existing promises made not to create a new or different obligation, but to avoid an employee who works someplace for years and then leaves and then says, oh, I didn't remember what my obligations were. I didn't know I couldn't reach out to my former colleagues. There's nothing new or different in here and nothing given to her for sure that would support under Texas law consideration because under Texas law, for the consideration to be valid to support a restrictive covenant, it has to give rise to the interest in restraining competition. And we did not, well, no, we did in our motion to reconsider, we raised the consideration issue, but because of the way we saw the case and because of the murky nature of the plaintiff's multiple amended pleadings and the plaintiff's summary judgment motion, we didn't read it like two separate counts of breach of contract. We responded to it like it was one. And as soon as we became aware that the court believed that there were more than one agreement, we responded immediately and raised all of these issues. So we think that we've addressed that. All right, counsel, all three of you, appreciate your help to us today in understanding this case. It is an interesting one, a few tricky issues, and we'll do the best we can. That is the end of our arguments of the day for the week, and we are adjourned.